kaw

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BARRON R. BOWLING,                           )
                                             )
                        Plaintiff,       )
                                             )
      vs.                                )
                                             )    Case No. 04-2320-JAR
UNITED STATES, et. al,                       )
                                             )
                 Defendants.      )
_____)

### Memorandum and Order

Before the Court is plaintiff Baron R. Bowling's Motion for Order Certifying as Frivolous (Doc. 255) the interlocutory appeal filed by Defendants Ware, Culp and Lane, appealing this Court's denial of qualified immunity in the summary judgment order. The parties submitted briefs and the Court heard the parties' oral arguments on April 29, 2009.  Being duly advised, the Court finds that the defendants' appeal from the Court's denial of qualified immunity on plaintiff's claims of malicious prosecution and abuse of process is frivolous. Accordingly, the plaintiff's motion is granted, and the Court does not lose jurisdiction and may proceed with the jury trial scheduled for June 22, 2009.  .

### Background

Defendants filed an interlocutory appeal, challenging the Court's denial of their claimed qualified immunity from prosecution of plaintiff's claims.   Plaintiff moved the Court to certify that the appeal was frivolous.  Defendants responded that the appeal is not frivolous because the Court erred in its analysis that there was no probable cause supporting the charges filed against plaintiff Bowling and erred in attributing to them any problem with the affidavit and testimony

given at the preliminary hearing, rather than the affiant.  Defendants further argue that with respect to plaintiff's claim for abuse of process, there was no clearly established law that abuse of process violates a constitutional right, such that they are entitled to qualified immunity on that claim.

As more thoroughly detailed in this Court's Memorandum and Order Denying Summary Judgment (Doc. 251), the following facts are uncontroverted, stipulated to, or taken in the light most favorable to Plaintiff.

Colonel Steve Culp, Major Dennis Ware and Detective Robert Lane are sworn officers of the Kansas City, Kansas Police Department.  The genesis of this case was a collision between plaintiff's car and an unmarked government car driven by Timothy McCue, a Special Agent of the Drug Enforcement Administration ("DEA").  Plaintiff was driving on a two lane street, and was legally driving in the lane of traffic, when Agent McCue illegally attempted to pass plaintiff on the right side.  The cars collided.  Angry about the collision,  Agent McCue and two other DEA agents pulled plaintiff from his car, threatened to kill plaintiff, and kicked, punch and beat plaintiff until he briefly lost consciousness.[1]   Although Agent McCue initially told the 911 operator that it was an accident, he thereafter took the position that plaintiff had intentionally rammed his car into McCue's car as McCue attempted to pass plaintiff on the right.

Detective Lane was the first Kansas City, Kansas police officer to arrive at the scene of the collision.  Lane observed that plaintiff had been injured and Lane was aware that there were eyewitnesses at the scene who had seen the DEA agents beating plaintiff.  Lane  reassured

---

[1] Based on the conduct of the DEA agents, plaintiff also brings a claim in this action against the United States under the Federal Tort Claims Act.  The United States did not move for summary judgment and stands ready for trial on plaintiff's claim.

plaintiff and plaintiff's wife that it was merely an accident, and that plaintiff would not be arrested. But, after Lane spoke with the DEA agents at the scene, Lane warned plaintiff that the DEA agents could "do pretty much whatever they want to do." Plaintiff was in fact arrested at the scene. After his arrest, and before officers placed him in the police car, plaintiff voluntarily gave officers a marijuana pipe he had on his person.

Plaintiff was detained in the county jail for two days before he was released. During the two days that plaintiff was in jail, Detective Lane told plaintiff's wife that although plaintiff was not charged with any crime, he was being held in custody so that the DEA agents would have time to get their "stories straight." Despite knowing that there were eyewitnesses at the scene who had seen the agents beating plaintiff, Lane did not take any statements from the witnesses. Instead, Lane directed Officer Shumaker to prepare a police report; and Lane told Shumaker what evidence to document and what charges to reference in the report. Shumaker's report stated that plaintiff rammed McCue's vehicle while McCue was passing on the right. Shumaker's report failed to mention that plaintiff was noticeably injured, failed to document any witness statements, and did not include photographs of plaintiff's injuries.

Also during the two days that plaintiff was in jail, Colonel Culp learned that a DEA agent was filing an aggravated assault charge against plaintiff. Major Ware advised Colonel Culp that Ware had assigned Detective Seifert to the case. Colonel Culp advised Major Ware to watch the case closely because Detective Seifert had had negative interactions with federal authorities in the past. After interviewing plaintiff, Detective Seifert expressed his concerns to Major Ware that: (1) there were allegations of police misconduct that should be referred to internal affairs; (2) it was suspicious that until he interviewed plaintiff, no one had told Detective Seifert that

Detective Lane was involved in the investigation; and (3) Detective Lane did not file a report detailing what occurred at the scene.

Detective Seifert had plaintiff released from jail pending further investigation.  At his supervisor's direction Seifert asked Lane to get reports from all the officers at the scene.  Seifert asked Lane why he did not take witness statements; Lane responded that it would look bad for the DEA agents, and that the police department should "cover" for them.  At Major Ware's direction, Lane provided his statement to Seifert.  Lane's statement did not mention what the witnesses had told Lane at the scene, nor did his statement include the impression he formed upon arrival at the scene, that it was merely an accidental collision.  At Major Ware's direction, Seifert interviewed the witnesses, but when Seifert presented the witness statements concerning the agents beating plaintiff, Major Ware was dismissive of him, asking Seifert if he thought he was an internal affairs investigator.

Upon presentation of Seifert's investigative file, the county prosecutor declined to prosecute plaintiff, finding that there was insufficient evidence of plaintiff "intending to do or threaten to do bodily harm to the agents," and that it was unlikely a jury would convict plaintiff of criminal damage to property because of the circumstances surrounding the accident. Colonel Culp asked the prosecutor to reconsider on the basis that the DEA had additional accident reports.  These additional reports, accident reports and the statements of four DEA agents, were not submitted to the prosecutor until August 12, 2003, more than a month after the car collision, and after the DEA agents had, at Colonel Culp's direction, obtained the police department's files and reports

Upon reconsideration, the prosecutor filed charges against plaintiff: a misdemeanor

charge of possession of drug paraphernalia, and a felony charge of criminal damage to property.

The charges were based on Detective Seifert's affidavit in support of probable cause, which

stated in pertinent part, that

> It is alleged that Mr. Bowling did drive his Lincoln Town Car into
> the left side of the motor vehicle being operated by Timothy
> McCue, therefore causing damage.  It is further alleged that this
> was done in a reckless manner by Barron R. Bowling, who upon
> being taken into custody and placed under arrest, was found to
> have on his possession a pipe used for the smoking of illegal
> narcotics/marijuana, according to Barron Bowling's own words.  It
> is further noted that these allegations are made by Timothy McCue
> against Barron R. Bowling, with Agent McCue stating that the
> crimes were committed in a wilful and wanton manner and that it
> is his wish and the wish of the Government of the United States to
> criminally prosecute Barron R. Bowling in regards to what has
> taken place.

Based on the affidavit, an arrest warrant was issued, and plaintiff was arrested and held in

custody for one day before posting bond.  At the preliminary hearing, the only evidence

presented in support of probable cause was the conclusory statements of McCue that plaintiff's

car collided with McCue's car, and that plaintiff did so intentionally.  Plaintiff was subsequently

convicted of possession of drug paraphernalia but acquitted of criminal damage to property.

Defendants Culp, Ware and Lane moved for summary judgment based on qualified

immunity.  The Court found that defendants acted to arrest, charge and prosecute plaintiff,

without probable cause to believe that plaintiff intentionally collided with McCue's car.  The

Court further concluded that at the time of the collision, the law was clearly established that

officers could not hide exculpatory evidence or invent inculpatory evidence in order to secure a

conviction.  The Court also found that defendants were not entitled to qualified immunity on

plaintiff's abuse of process claim because they acted without probable cause.  Furthermore, the

defendants' conduct, pursuing a criminal prosecution based on false or fabricated evidence, in order "to cover" for another law enforcement agency was conduct in contravention of clearly established law.

**Discussion**

In *Mitchell v. Forsyth*, the Supreme Court stated that a defendant's appeal from a summary judgment order based on qualified immunity was a collateral order for which interlocutory appeal was available.[2]  The Court explained that a public official's entitlement to the defense of qualified immunity was an entitlement not to stand trial or face the burdens of litigation.[3]  Accordingly, when a defendant files an appeal based on qualified immunity, the district court is divested of jurisdiction and any subsequent action is null and void.[4]

There is, however, a recognized exception to the general principle stated above.  The Tenth Circuit has noted that an interlocutory appeal does not necessarily leave the district court powerless to prevent intentional dilatory tactics by a defendant.[5]  A district court may regain jurisdiction, while the Circuit continues with jurisdiction, if it certifies that an appeal is frivolous.[6]  In making its determination, the district court must conduct a hearing on the issue, and if it finds substantial reasons that the appeal is frivolous, explicitly state those reasons and it will regain jurisdiction.[7]  In the absence of specific findings by the district court that the appeal is

---

[2] 472 U.S. 511, 530 (1985).

[3] *Id*. at 526.

[4] *Stewart v. Donges*, 915 F.2d 572, 575 (10th Cir. 1990) (citation omitted).

[5] *Id*. at 576 (citing *United States v. Hines*, 689 F.2d 934, 936-37 (10th Cir. 1982)).

[6] *Id*.; *United States v. Power Eng'g Co.*, 10 F. Supp. 2d 1165, 1169 (D. Colo. 1998).

[7] *Id*.

frivolous, the trial is automatically stayed pending the appeal.[8]  The burden is on the plaintiff to show that the appeal is frivolous.[9]

"An appeal is frivolous if it is baseless, unfounded, or a sham."[10]  The Circuit defines a frivolous appeal as one where the result is obvious, or where appellant's arguments are wholly without merit.[11]  The Tenth Circuit observes that "'frivolity, like obscenity, is often difficult to define.'"[12]

### Defendants' Arguments

Defendants maintain that their appeal of this Court's order denying them summary judgment on grounds of qualified immunity is not a frivolous appeal.  Defendants argue that the Court's summary judgment order was erroneous in that: (I) the Court failed to presume that the judicial determination of probable cause was correct; (II) the Court erred in presuming Agent McCue's statement to be false; (III) there is no requirement that the affidavit or testimony in support of probable cause include exculpatory evidence; (IV) the affidavit had no false information; (V) there is no evidence that McCue made false statements; (VI) Detective Seifert was the affiant, so defendants are immune; and (VII) there was no clearly established law that abuse of process violates a constitutional right.

---

[8]*Id.* at 577.

[9]*Id.*

[10]*Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas, et. al. v. Kansas*, Nos. 92-4233-SAC, 92-4234-SAC, 1993 WL 192795, at * 5 (D. Kan. May 19, 1993) (citing *Apostal v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989)).

[11]*Ford v. Pryor*, 552 F.3d 1174, 1180 (10th Cir. 2008); *Wheeler v. IRS*, 528 F.3d 773, 782 (10th Cir. 2008).

[12]*Braley v. Campbell*, 832 F.2d 1504, 1511 (10th Cir. 1987) (quoting *WSM, Inc. v. Tenn. Sales Co.*, 709 F.2d 1084, 1088 (6th Cir. 1983)).

I

Citing to *St. John v. Justmann*,[13] defendants maintain that the Court erred in not presuming that the state court judicial officer's determination of probable cause was correct. Although the Supreme Court has repeatedly stated that a magistrate judge's determination of probable cause is entitled to substantial deference,[14] it has also noted that probable cause does not arise from an affidavit that is "purely conclusory, stating only the affiant's or informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based."[15]

In this case, defendants rely on an affidavit that is patently lacking in any justification for probable cause even accepting the allegations in the affidavit as true.  In fact, the affidavit consists of the conclusory statements of Agent McCue, that plaintiff drove in a reckless, willful and wanton manner, which was the only basis for a claim that plaintiff *intentionally* damaged McCue's vehicle.  There are no facts supporting these conclusions.  There is no description of where, when and how the accident occurred.  There is no mention that McCue was illegally passing on the right side, in a bus lane that ran out.  There is no mention of the respective damage to the cars that might be indicative of an intentional ramming of plaintiff's vehicle into McCue's vehicle, as opposed to an accidental side swiping.  There is no mention that McCue initially reported the incident as an accident, nor that Detective Lane concluded that it was an accident upon his early arrival at the scene.

---

[13]771 F.2d 445, 447-48 (10th Cir. 1985).

[14]*Illinois v. Gates*, 462 U.S. 213, 289 (1983) (J. White, Concurring); *St. John v. Justmann,* 771 F.2d at 447-48.

[15]*United States v. Ventresca*, 380 U.S. 102, 108-9 (1965).

In fact, the only information in the affidavit beyond McCue's conclusory statements, is that plaintiff possessed a marijuana pipe at the time of the collision, apparently implying that plaintiff was driving under the influence or driving while impaired.  Of course, the affidavit merely implies this, and provides no explanation of such.  There is no mention of plaintiff being blood tested for alcohol or controlled substances.  And, more tellingly, the affidavit does not state that plaintiff volunteered the pipe to the officers as he was being arrested, rather than the officers finding the pipe on their own.  Nonetheless, the affidavit provides sufficient facts supporting probable cause to believe that plaintiff possessed drug paraphernalia, a misdemeanor crime.  But the affidavit does not provide sufficient facts supporting probable cause to believe that plaintiff intentionally damaged Agent McCue's vehicle.

## II

Next, defendants argue that the Court erred when it presumed McCue's statements to be false.  However, in accordance with the evidence submitted on summary judgment and the summary judgment standard, the Court merely abided by the applicable standards at the summary judgment stage of the proceeding.

The legal standards, as expressed in the Court's memorandum and order (Doc. 251) sufficiently detail the law.[16]  In determining probable cause at this stage of the proceeding— where an arrest warrant is before a magistrate judge—the affidavit must demonstrate a substantial probability that a crime has been committed.[17]  If an officer relies on information he knows to be false or omits information relevant to the determination of probable cause, this

---

[16]*See* Doc. 251, n. 20 explaining that "[a]n arrest warrant is 'a classic example of the institution of legal process.'"

[17]*Wilkins v. DeReyes*, 528 F.3d 790, 801 (10th Cir. 2008).

Court's hindsight determination of probable cause is accomplished by disregarding the allegedly false information in the affidavit and including in the affidavit, material omissions.[18]   The Court followed these rules in evaluating whether there was probable cause to believe that plaintiff had intentionally damaged McCue's vehicle.

Contrary to defendants' presumptious argument, the Court did not merely presume that McCue's statements were false. Rather, the Court reviewed the record in the light most favorable to plaintiff, and found that there was substantial evidence refuting McCue's conclusory assertion that plaintiff intentionally collided with McCue's vehicle.  Not only was there McCue's initial characterization of the incident as an accident, there was Detective Lane's impression that it was just an accident and Lane's explanation to plaintiff and plaintiff's wife that it was an accident, but that the DEA agents could do what they want, and that plaintiff was being held for two days, so the DEA agents could get their stories straight.  In short, the Court did not *presume* McCue's statements to be false; the Court engaged in a thorough review of the record in the light most favorable to plaintiff, in determining whether there was probable cause.

III

Defendants also argue that the Court erred when it concluded that McCue's statement alone was insufficient to establish probable cause, thereby setting a precedent for denying qualified immunity any time that a criminal defendant challenges the veracity of the affiant, informant or other person whose information formed the basis for a finding of probable cause. Defendants misconstrue this Court's analysis.  To be sure, a determination of probable cause may be based on the statement of one person.  But, as explained above, where that person's

---

[18]*Id.*

10

statements are conclusory, lacking any explanation or support, probable cause is lacking, particularly where, as here, there is information calling into question the veracity of such person. Where there are circumstances suggesting that the person's statement is not credible, corroboration is necessary to substantiate probable cause,[19] because probable cause needs to based on reasonably trustworthy information.[20]  In this case, there was ample evidence suggesting that McCue's conclusory statements were not credible.[21]  And, an officer, with access to such exculpatory information that materially contradicts a lone witness's statement of what occurred is not permitted to rely solely on that lone witness's suspect version of events, when there is verifiable and accessible evidence to the contrary.[22]

IV

Defendants also argue that the affidavit did not contain any false information.  But, this Court's role in evaluating whether defendants should be granted qualified immunity upon summary judgment, is to consider the evidence in the light most favorable to plaintiff.  And viewing the evidence in that light, the Court finds that the affidavit falsely stated that plaintiff drove recklessly, wantonly and wilfully.  Moreover, the affidavit omits material information suggesting that it was Agent McCue who drove recklessly, and that the subsequent arrest,

---

[19]*See Munday v. Johnson*, 257 F. App'x 126, 131 (10th Cir. Dec. 5, 2007).

[20]*Maryland v. Pringle*, 540 U.S. 366, 372 n. 2 (2003); *Buck v. Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008).

[21]The facts are that: (1) the affidavit/testimony was in support of a charge of intentional criminal damage to McCue's vehicle, arising out of the collision; (2) the only evidence concerning the collision was McCue's statement that plaintiff rammed his car into McCue's car; (3) the only evidence that plaintiff acted with the requisite intent for the mens rea element of this criminal statute was McCue's bald, conclusory statement that plaintiff did this intentionally.

[22]*See Cortez v. McCauley*, 478 F.3d 1108, 1117 (10th Cir. 2007) (citations omitted).

11

charges and prosecution were, in the words of defendant Lane, a way to "cover" for a DEA agent who caused damage to a government owned vehicle by attempting to illegally pass plaintiff on the right side, and then in a fit of anger, beat plaintiff.

The defendants are correct that generally, an officer is not required to report every investigative detail, and are not required to report that the criminal defendant denies committing the act or refutes the version of events in the affidavit.  But, in the context of determining qualified immunity at the summary judgment stage, the Court necessarily determines whether there was probable cause, once false statements are excised and material omissions are included in the affidavit, particularly where, as here, the affidavit is based solely on the conclusory statements of the complaining witness.   Defendants simply cannot hide behind the fact that Seifert's affidavit omitted relevant and exculpatory information that they were aware of when the affidavit was submitted.

Defendants argue that the fact the agents beat plaintiff was not a material omission from the affidavit, arguing that the beating had nothing to do with the charge of criminal damage to property. This is a disingenuous argument.  Just as the circumstances of the collision suggest that if anyone was at fault, it was McCue, the fact that the agents beat plaintiff after the collision further suggests a motive for the agents encouraging the police department to pursue a false charge against plaintiff for intentional criminal damage to property.  It was just as Detective Lane characterized it; a way to provide "cover" for Agent McCue, who had wrecked an official governmental vehicle, and "cover" for Agent McCue and the other agents who angrily beat up the driver of the other car involved in the collision.

V

Defendants make a corollary argument, that there is no evidence that McCue made false statements.  The Court will not belabor the point.  For the reasons mentioned above, defendants' argument is without merit.  And, as detailed on pages 16-17 of the summary judgment order,[23] the evidence, when viewed in the light most favorable to plaintiff, strongly suggests that McCue's statements were false.

## VI

Next, defendants argue that even if the affidavit was incorrect or omitted information relevant to a determination of probable cause, they are entitled to qualified immunity because they were not the affiants.  In fact, defendants go so far as suggesting that plaintiff is suing the wrong persons and should be suing Detective Seifert, the affiant.  But the fact that the defendants were not the affiant does not mean that they could not have violated plaintiff's constitutional rights. Plaintiff claims that the defendants individually and together violated and conspired to violate his Fourth and Fourteenth Amendment rights.  And, when viewed in the light most favorable to plaintiff, there is evidence suggesting that Colonel Culp, Major Ware and Detective Lane acted in concert and with knowledge that the DEA agents were asking them to pursue an unfounded charge of intentional damage to property.  There is evidence that these three

---

[23] As detailed in the summary judgment order, the facts suggesting that Agent McCue falsely stated that plaintiff intentionally collided with his vehicle are: "(1) Officer Lane assuring Plaintiff that it was an accident, but later telling Plaintiff that Plaintiff "was screwed," because the DEA  agents could do whatever they wanted; (2) eyewitnesses and Plaintiff telling Officer Lane that the DEA agents had beaten Plaintiff; (3) Officer Shumaker observing that Plaintiff was injured; (4) Officer Lane directing Officer Shumaker what to put in his report – and Shumaker's report not mentioning the evidence that the DEA agents had beaten Plaintiff; (5) Officer Lane telling Detective Seifert that he did not take witness statements because it would make the agents look  bad, and that they should "cover for them;" (6) Major Ware asking Seifert if he thought he was an internal affairs investigator when Seifert produced the eye witness statements that the DEA agents had beaten Plaintiff; (7) Officer Lane telling Mrs. Bowling that Plaintiff was being held in custody, not because he committed a crime but to allow agents more time to get their "stories straight;" (8) Culp discussing the incident with Agent Johnson, and then telling Seifert and Ware that federal agents would be coming to retrieve some information from Seifert's investigative file; and (9) the delay Detective Seifert experienced in receiving statements from Officer Lane, and the DEA agents."

defendants acted in concert in the aftermath of Agent McCue's collision with plaintiff's car and the DEA agents immediate reaction to the collision, beating, punching and kicking plaintiff until he lost consciousness.

Detective Lane knew it was an accident and assured plaintiff that it was an accident, while ignoring the obvious, that the DEA agents had beat plaintiff there at the accident scene. Detective Lane pointedly failed to take statements from the eyewitnesses to the beating, and admitted to plaintiff that the DEA agents could do what they wanted to, meaning arrest plaintiff for an accident.  Lane admitted to plaintiff's wife that he was being detained for two days so that the DEA agents could get their stories straight.  Lane then directed Officer Shumaker's investigation, telling him not to take witness statements and explaining to him that they needed to "cover" for the DEA agents.

Meanwhile Major Ware assigned Detective Seifert to the case, and Colonel Culp directed Major Ware to watch the investigation closely, because Seifert had had negative interactions with federal agents in the past.  Seifert conferred with Ware during the investigation and made Ware aware of his concerns that the DEA agents had beat up plaintiff, and that within his own police department, no one had been forthcoming with material information, that Detective Lane was at the accident scene.  Seifert questioned why he had no statement from Lane; and Ware directed Seifert to get Lane's statement.   But Ware balked when Seifert produced witness statements concerning the agents beating Plaintiff, and essentially suggested that Seifert was out of line in investigating the beating because Seifert was not in internal affairs.

Colonel Culp directed Major Ware to monitor Detective Seifert's investigation.  At the same time, Colonel Culp arranged for the DEA agents to get the police department's reports,

14

after discussing the matter with McCue's supervisor.  And, Culp convinced the prosecutor to reconsider prosecution on the basis that the DEA had "additional" reports about the incident.

In short, defendants Culp, Ware and Lane, the facts suggest, were knowledgeable of the circumstances of the collision and the resulting beating of plaintiff, and were to one degree or another, supportive and collaborative of the effort to "cover" for the DEA agents.  When viewed in the light most favorable to plaintiff, the facts and reasonable inferences to be drawn therefrom, show that defendants knew the charge of intentional damage to property was unfounded.  Yet they participated in an attempt to cover for the DEA agents both the circumstances of the collision and their beating of plaintiff, by subjecting plaintiff to prosecution on unfounded criminal charges, detention in jail, and a potential felony conviction.  As the Tenth Circuit recognized, "actions of a police [officer] who prevaricates and distorts evidence to convince the prosecuting authorities to press charges is no less reprehensible than an officer who, through false statements, prevails upon a magistrate to issue a warrant."[24]

VII

Not all torts are actionable under § 1983.[25]  In *Pierce v. Gilchrist*, the Tenth Circuit stated that by the time of trial, the constitutional analysis shifts from the Fourth Amendment to the Due Process Clause, and agreed with those courts concluding that the Due Process Clause protects a person's liberty.  In that same case, the Tenth Circuit instructed that whether a law is clearly established is based on whether the unlawfulness of the officers' actions is apparent to a

---

[24]*Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004).

[25]*Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006).

reasonable officer.[26]   The Court went on to explain that officials can still be held liable in novel factual situations where it is a apparent that their conduct would violate some constitutional rights. Indeed, the Tenth Circuit stated that it has been clearly established as of 1986 that to knowingly omit information from an arrest warrant affidavit violates an individual's Fourth and Fourteenth Amendment rights.[27]

In *Becker v. Kroll*, the Court foreclosed any claim based on the Fourteenth Amendment where criminal charges are brought but later dismissed.[28]   Discussing *Albright v. Oliver*, the Court recognized that at the pretrial stage, the Fourth Amendment is applicable, but it did not foreclose a claim based on the Fourteenth Amendment where a case proceeds to trial based on allegedly false and omitted evidence.   This is such a case.   Accordingly, this Court determined that plaintiff's Fourteenth Amendment right was violated when officers continued the prosecution relying on fabricated and omitted evidence to obtain a conviction to prevent plaintiff from filing a civil action.

Defendants argue that the Tenth Circuit has not reached the question of what constitutional provision would be violated by conduct constituting an abuse of process.   To be sure, as this Court explained in the summary judgment order, the relationship between the Fourth Amendment and Fourteenth Amendment in this context is not clear.   But the fact that there is no law addressing this specific question does not negate the fact that a reasonable officer would have known that irrespective of which constitutional amendment is implicated, it was clearly

---

[26]*Pierce*, 359 F.3d at 1298 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

[27]*Id.* at 1299.

[28]494 F.3d 904, 918 (10th Cir. 2007).

established that an officer may not employ the criminal justice process, to file, prosecute and seek conviction on unfounded charges, for illicit or retaliatory purposes.  In this case, there is evidence that defendants did just that.

**Conclusion**

Thus, the Court concludes that the defendants' appeal from the Court's denial of qualified immunity on plaintiff's claims for malicious prosecution and abuse of process, is a frivolous interlocutory appeal.  Accordingly, **trial will proceed as scheduled on June 22, 2009**.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Certify Defendants' Appeal as Frivolous is **Granted** . .

**IT IS SO ORDERED.**

Dated:  May 11, 2009

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

17